**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF FLORIDA**
**PENSACOLA DIVISION**

**UNITED STATES OF AMERICA**

     **v.**                           **Case No. 3:06cr448-01/RV**

**VIRGIL TALLEY**
_____/

## <u>ORDER</u>

The defendant Virgil Talley, *pro se*, has filed two motions now pending before the court. Although somewhat unclear, the first appears to be a motion for my recusal (doc. 76), and the second appears to be a motion to dismiss (doc. 78).

**I. Background**

The defendant, a federal prisoner, is charged in a three-count indictment with conspiracy and obstruction of justice. In short, it is alleged that during his incarceration he prepared numerous documents containing false allegations and claims against Judge Lacey Collier (the judge who presided over his criminal trial); Benjamin Beard (the Assistant United States Attorney who served as lead prosecutor for that trial); and Gregory Miller (the United States Attorney for the Northern District of Florida). These several documents consisted of, *inter alia*, bonds, default notices, and creditor liens filed pursuant to the Uniform Commercial Code ("UCC"), in which it was claimed, among other things, that USA Miller and AUSA Beard owed the defendant between $825,180 and $203,000,000. The defendant allegedly attempted to file with, or sent these documents to, various

*Case No. 3:06cr448-01/RV*

courts, agencies, and other departments of the government, in an attempt to prevent or obstruct the administration of justice.[1]

Trial in this case is currently scheduled to begin Monday, August 13, 2007.

**II. Discussion**

As noted, there are two motions pending. The defendant first moves for my recusal (doc. 76). Apart from a general claim in the motion that "the Court in the person of ROGER VINSON lacks the requisite subject matter jurisdiction and in personnam jurisdiction" to preside over this case --- a claim discussed and rejected below --- it appears that the motion for recusal is based on the fact that the defendant has recently filed a charge of judicial misconduct against me, as well as

---

[1] The defendant is, of course, presumed innocent of these charges. But, with respect to the *nature* of the charges themselves, I note (as other courts have) that "[t]he abusive practice of prisoners filing baseless liens and/or UCC financing statements for the purpose of harassment and credit impairment of the alleged debtor (almost always a state or federal official involved with securing the prisoner's incarceration) is well documented." Hardin v. Michigan Dep't of Corrections, 2007 WL 1975102, at *6 (W.D. Mich. Mar. 28, 2007) (collecting multiple cases, including United States v. Gordon, 2005 WL 2237640 (S.D. Ga. Aug. 25, 2005) (prisoner filed "facially absurd" liens and UCC financing statements designed to harass and intimidate government officials in the performance of their duties); United States v. Orrego, 2004 WL 1447954 (E.D.N.Y. June 22, 2004) (prisoner filed fraudulent liens against government officials); Ray v. Williams, 2005 WL 697041 (D. Or.  Mar. 24, 2005) (prisoner engaged in fraudulent scheme by which he filed false UCC filings against government officials); United States v. Martin, 356 F. Supp. 2d 621 (W.D. Va. 2005) (prisoner filed fraudulent UCC financing statements naming himself as the secured party for a $108,000,000.00 debt owed him by various government officials); United States v. Brum, 2005 WL 1606584 (E.D. Tex. July 1, 2005) (prisoner filed fraudulent liens and UCC financing statements against the judge and prosecutor involved in his criminal conviction); Cooperwood v. McDonald, 2005 WL 1427718 (W.D. Mich. June 13, 2005) (prisoner filed a fraudulent lien against several judges and prosecutors); United States v. Stouder, 2005 WL 2715666 (M.D. Tenn. Sept. 2, 2005) (prisoner filed fraudulent UCC financing statements against government officials in the amount of $300,000,000.00)).

a separate lawsuit seeking damages from this court in the amount of
$78,600,000.00. These complaints stem from the arraignment in this case, where
(over his objections) I urged the defendant not to waive counsel, appointed him
stand-by counsel, ordered that he undergo a psychiatric evaluation, and insisted
that he enter a plea of either guilty or not guilty.[2]

    I am now the third judge in this court assigned to the defendant's case. It
appears that his defense tactic is to file judicial complaints and/or lawsuits against
the presiding judge (or, indeed, anyone affiliated with the case), attempt to seek
that judge's recusal, and then continue the same foolish routine until he exhausts
the supply of judges. The law, however, does not permit such "judge-shopping,"
and this tactic will not be tolerated. See, e.g., Brown v. U.S. Patent and Trademark
Office, 2007 WL 446601, at *2 (11th Cir. Feb. 13, 2007) (unpublished opinion)
("A party's complaints regarding judicial rulings [and] routine trial administration
efforts . . . are not sufficient to require recusal."); Woodruff v. McLane, 2006 WL
3436045, at *1 (M.D. Ga. Nov. 29, 2006) (noting that courts have "consistently
held that a judge is not disqualified . . . merely because a litigant sues or threatens
to sue him;" a per se rule of disqualification in that situation "would allow litigants
to judge shop by filing a suit against the presiding judge," and the same rationale
must apply to a complaint of judicial misconduct); Smartt v. United States, 267 F.

---

    [2] I am aware that there are several internet websites that specifically
encourage litigants to do what the defendant has done in this case. See, e.g.,
Court Survival Guide, located at http://geocities.com/jtrooper_2000/COURT.htm
(stating, inter alia, that a defendant should refuse to enter a plea at arraignment,
repeatedly challenge the court's jurisdiction, reject attorney representation, and
proceed pro se so as to "expose the many fraudulent deceptions and procedures
being used against you"). Despite the absurdity of such advice, the defendant
seems to be adamantly following the websites' outlined course of conduct. His
bizarre assertions were the basis for questioning the defendant's sanity, but a
mental evaluation by the Bureau of Prisons has now confirmed that the defendant
is mentally competent (as set out in a separate order).

Supp. 2d 1173, 1176-77 (M.D. Fla. 2003) (collecting multiple cases and holding that recusal statute "is not intended to bestow a veto power over judges, or to permit 'judge-shopping' . . . [T]he law does not permit [a defendant] to force recusal by making baseless ethical attacks on the assigned judge, or to intimidate the assigned judge through frivolous complaints of judicial misconduct"). The motion for recusal (doc. 76) must be, and is, DENIED.

The defendant has next filed a motion entitled "Notice of Official Records Offered into Evidence Pursuant to FRCRP-Rule 27/FRCVP-Rule 902 (4), (8) & (9), Applicable to All Successors and/or Assigns," which appears substantively to be a motion to dismiss for lack of "subject matter jurisdiction and in personnam jurisdiction" (doc. 78). This motion is unintelligible and confusing, but it apparently seeks dismissal of all charges on the ground that the defendant ("as a man who does not appear in public") is "neither a UNITED STATES citizen, a 14th AMENDMENT citizen, a STATE OF FLORIDA citizen, a UNITED NATIONS citizen, a WASHINGTON, D.C. citizen, nor any citizen at all." The defendant claims that he does not have "any liability" to this court or to the government, which he describes as "a legal fiction operating in commerce for profit under limited liability insurance." The motion to dismiss (doc. 78) is frivolous on its face, and it is also DENIED.

DONE AND ORDERED this 27th day of July, 2007.

/s/ *Roger Vinson*
**ROGER VINSON**
**Senior United States District Judge**